**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 25 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SANTIAGO CASTRO-ROCHA, also
known as Juan Blanco-Montisima,

Defendant-Appellant.

No. 02-1106

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 01-CR-404-B)

---

**Submitted on the briefs:**

John W. Suthers, United States Attorney; Gregory Goldberg, Assistant United
States Attorney, Denver, Colorado, for Plaintiff-Appellee.

Michael G. Katz, Federal Public Defender, Warren R. Williamson, Assistant
Federal Public Defender, Madeline S. Cohen, Assistant Federal Public Defender,
Denver, Colorado, for Defendant-Appellant.

---

Before **HENRY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

After examining the briefs and appellate record, this three-judge panel determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Accordingly, on January 14, 2003, this court entered an order directing that the case be submitted without oral argument.

Santiago Castro-Rocha pleaded guilty to illegally reentering the United States after deportation in violation of 8 U.S.C. § 1326. The district court sentenced him to a fifteen-month prison term, followed by three years of supervised release. In calculating the appropriate sentence under the 2001 version of the United States Sentencing Guidelines ("U.S.S.G."), the district court increased Castro-Rocha's offense level by eight pursuant to U.S.S.G. § 2L1.2(b)(1)(C). Over a defense objection, the district court concluded that Castro-Rocha was subject to the 2001 version of § 2L1.2(b)(1)(C) because his prior Texas state drug conviction constituted an "aggravated felony." Castro-Rocha appeals. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and **affirms**.[1]

---

[1]On January 9, 2003, the United States filed a Motion to Dismiss Appeal and Vacate Oral Argument (the "Motion"). In the Motion, the United States asserted that this appeal was moot because Castro-Rocha had completed his term of imprisonment. In response to the Motion, this court ordered the parties to file supplemental briefs addressing the question whether this appeal is moot. In response, the United States moved to withdraw the Motion. The United States

The facts relevant to the disposition of this appeal are undisputed. Castro-Rocha is a citizen of the Republic of Mexico. In April of 2001, he was convicted in Texas state court of possession of a controlled substance and sentenced to a one-year term of imprisonment (suspended), two years probation, and a $1500 fine. The conviction for simple possession amounted to a felony under Texas law. Castro-Rocha was deported to Mexico in July of 2001.

---

recognized that if Castro-Rocha were to prevail on the merits of his claim, his offense level would decrease from 13 to 10 and his sentencing range would decrease from 15-21 months' imprisonment to 8-14 months' imprisonment. Because, in that circumstance, the district court could choose to impose a term of imprisonment of less than one year, the district court could also choose to impose a lesser term of supervised release, or no term of supervised release at all. *Compare* U.S.S.G. § 5D1.1(a) (providing that a court *shall* impose a term of supervised release if it imposes a sentence of imprisonment of more than one year) *and id.* § 5D1.2(a) (providing that if a term of supervised release is imposed, the length of the term *shall* be "at least two years but not more than three years for a defendant convicted of a Class C or D felony), *with id.* § 5D1.1(b) (providing that a court *may* order a term of supervised release to follow a term of imprisonment of less than one year). Accordingly, if Castro-Rocha were to prevail on the merits of this appeal, the district court could grant him effective relief by either shortening or eliminating his term of supervised release. As noted by Castro-Rocha in his supplemental brief, and recognized by the United States in its request to withdraw the Motion, every circuit that has addressed this circumstance has concluded that the appeal is not moot. *See United States v. Molak*, 276 F.3d 45, 48 (1st Cir. 2002); *United States v. Verdin*, 243 F.3d 1174, 1178 (9th Cir. 2001); *Dawson v. Scott*, 50 F.3d 884, 886 n.2 (11th Cir. 1995). We join these circuits and hold that a defendant's unexpired term of supervised release, which could be reduced by a favorable appellate decision, is sufficient to defeat a claim of mootness. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." (quotations omitted)).

In October of 2001, Castro-Rocha was found in Colorado. He had not obtained the express consent of the Attorney General to reapply for admission into the United States. That same month, he was charged in a one-count indictment with illegally reentering the United States after a prior deportation in violation of 8 U.S.C. § 1326. Castro-Rocha pleaded guilty to reentering the United States in violation of § 1326 in exchange for the government's promise to recommend that he be sentenced at the bottom of the applicable sentencing guideline range.

The United States Probation Office prepared a presentence report ("PSR") which concluded that Castro-Rocha's offense level was thirteen. In making this calculation, the PSR set Castro-Rocha's base offense level at eight pursuant to U.S.S.G. § 2L1.2(a). The PSR then increased his offense level by eight levels, concluding that the Texas simple possession conviction constituted an "aggravated felony" for purposes of the 2001 version of U.S.S.G. § 2L1.2(b)(1)(C). The PSR then reduced the offense level by three for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. The resulting total offense level of thirteen, when coupled with Castro-Rocha's criminal history category of II, resulted in a sentencing range of fifteen to twenty-one months.

Castro-Rocha filed a single objection to the PSR. In his objection, he recognized that in *United States v. Cabrera-Sosa*, 81 F.3d 998, 999-1001 (10th

Cir. 1996), this court held that a state felony conviction for simple possession constituted an "aggravated felony" for purposes of the pre-2001 version of § 2L1.2. He asserted, however, that the amendments to § 2L1.2 adopted on November 1, 2001, required a reexamination of the question whether a state felony conviction for simple possession constituted an "aggravated felony" for purposes of § 2L1.2(b)(1)(C). The district court overruled Castro-Rocha's objection, concluding both that it was bound by *Cabrera-Sosa* and that it was not necessary to adopt the definition of "aggravated felony" advocated by Castro-Rocha in order to give effect to the November 1, 2001 amendment to § 2L1.2.

The sole question in this case is whether the district court erred in concluding that a state felony conviction for simple possession of a controlled substance is an "aggravated felony" for purposes of the 2001 version of U.S.S.G. § 2L1.2(b)(1)(C). The district court's interpretation of the sentencing guidelines is a legal question subject to *de novo* review. *United States v. Holbert*, 285 F.3d 1257, 1259 (10th Cir. 2002).

Prior to November 1, 2001, the effective date of the amendments at issue in this case, § 2L1.2(b) provided as follows:

> (1) If the defendant previously was deported after a criminal conviction, or if the defendant unlawfully remained in the United States following a removal order issued after a criminal conviction, increase [the base offense level] as follows (if more than one applies, use the greater):

> (A) If the conviction was for an aggravated felony, increase by **16** levels.
>
> (B) If the conviction was for (i) any other felony, or (ii) three or more misdemeanor crimes of violence or misdemeanor controlled substance offenses, increase by **4** levels.

U.S.S.G. § 2L1.2(b) (2000). In *Cabrera-Sosa*, this court concluded that a state felony conviction for simple possession constituted an "aggravated felony" for purposes of the sixteen-level enhancement set out in § 2L1.2(b). We reached this conclusion by first noting that the application notes to § 2L1.2(b) specifically incorporated the definition of "aggravated felony" currently set out in 8 U.S.C. § 1101(a)(43). *See Cabrera-Sosa*, 81 F.3d at 999-1000. Section 1101(a)(43), in turn, defines "aggravated felony" as, *inter alia*, "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." *See Cabrera-Sosa*, 81 F.3d at 1000 (quoting 8 U.S.C. § 1101(a)(43)(B)). As to the further incorporation of 18 U.S.C. § 924(c), this court indicated as follows:

> Under section 924(c)(2), the relevant statute, "the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. [§] 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. App. § 1901 et seq.)." 18 U.S.C. § 924(c)(2). "For a drug offense to come within this statute, and, in turn, to meet the definition of 'aggravated felony,' it must meet two criteria: first, the offense must be punishable under one of these three enumerated statutes; and second, the offense must be a felony." *United States v. Forbes*, 16 F.3d 1294, 1301 (1st Cir. 1994).

> [Cabrera-Sosa's] 1990 conviction meets both criteria. First, possession of cocaine is clearly punishable under the Controlled Substances Act. *See, e.g.*, 21 U.S.C. § 844(a). Second, it is undisputed that Mr. Cabrera-Sosa's 1990 conviction was a felony within the meaning of section 924(c)(2) even though it was a state conviction. The Controlled Substances Act defines a felony as "any Federal or State offense classified by applicable Federal or State Law as a felony." 21 U.S.C. § 802(13). Under New York law any criminal offense punishable by more than one year is a felony. N.Y. Penal Law § 10.00(5) (McKinney 1995). Since Mr. Cabrera-Sosa's sentence for his 1990 conviction was fifteen months, the offense was a felony under New York law. *See Forbes*, 16 F.3d at 1301 n.10; *Jenkins v. INS*, 32 F.3d 11, 14 (2d Cir. 1994).

*Cabrera-Sosa*, 81 F.3d at 1000 (footnote omitted).

It is absolutely clear, and Castro-Rocha does not contest, that under the interpretation of the term "aggravated felony" set out in *Cabrera-Sosa,* he would be subject to the eight-level increase set out in the new version of § 2L1.2(b)(1)(C). He asserts, however, that the amendments to § 2L1.2, effective November 1, 2001, altered the definition "aggravated felony" to exclude state simple possession felony convictions. The new version of § 2L1.2 sets out a graduated scale of sentencing enhancements based on the type of crime that preceded the previous deportation. It provides as follows:

> (1) Apply the Greatest:
> If the defendant previously was deported, or unlawfully remained in the United States, after—
> (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national

security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense committed for profit, increase by **16** levels;

(B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by **12** levels;

(C) a conviction for an aggravated felony, increase by **8** levels;

(D) a conviction for any other felony, increase by **4** levels; or

(E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by **4** levels.

U.S.S.G. § 2L1.2(b)(1). The application notes to § 2L1.2 were also significantly altered to reflect the changes to the text of the guideline. In particular, the application notes contain a new definition of "drug trafficking offense" which does not include simple possession crimes. *See* U.S.S.G. § 2L1.2, app. n.1(B)(iii). Nevertheless, the application notes continue to define the term aggravated felony by reference to 8 U.S.C. § 1101(a)(43). *See* U.S.S.G. § 2.1.2, app. n.2 ("Application of Subsection (b)(1)(C).—For purposes of subsection (b)(1)(C), 'aggravated felony' has the meaning given that term in 8 U.S.C. § 1101(a)(43), without regard to the date of conviction of the aggravated felony.").

Castro-Rocha argues that the changes to § 2L1.2 set out above remove simple possession convictions from the class of aggravated felonies described in § 2L1.2(b)(1)(C). He notes that *Cabrera-Sosa* relied on the term "drug trafficking crime" from 18 U.S.C. § 924(c)(2) to conclude that a state simple drug

-8-

possession conviction constituted an "aggravated felony." *See* 81 F.3d at 1000.

He notes, however, that the new application notes accompanying the amendment

of § 2L1.2 provide a definition of "drug trafficking offense" that clearly excludes

simple possession. In essence, Castro-Rocha contends that by singling out drug

crimes that have a trafficking element for special treatment under the Guidelines,

the Sentencing Commission demonstrated its intent to treat simple possession

convictions as ordinary felonies. More specifically, Castro-Rocha contends that

the definition of "drug trafficking offense" in the application notes to the 2001

version of § 2L1.2 also defines "drug trafficking crime" for purposes of 8 U.S.C.

§ 1101(a)(43), obviating the need to rely on the more expansive definition of

"drug trafficking crime" set out in 18 U.S.C. § 924(c)(2).

In *United States v. Soberanes*, 318 F.3d 959 (9th Cir. 2003), the Ninth

Circuit recently rejected arguments identical to those made by Castro-Rocha*.*

> Defendant's interpretation of the amended guideline is
> unpersuasive for three reasons. First, application note 1, defining
> "drug trafficking offense," facially limits its reach. The application
> note says that it is to be used "[f]or purposes of subsection (b)(1)."
> It does not claim to have any force for the purposes of 8 U.S.C. §
> 1101(a)(43)(B). Thus, application note 1's definition applies to the
> use of "drug trafficking offense" only when that term appears
> verbatim within the text of the guideline itself, namely, in U.S.S.G. §
> 2L1.2(b)(1)(A), (B), and (E).
> Second, a fundamental canon of statutory interpretation holds
> that, when there is an apparent conflict between a specific provision
> and a more general one, the more specific one governs, regardless of
> the priority of the provisions' enactment. *Cal. ex rel. Sacramento
> Metro. Air Quality Mgmt. Dist. v. United States*, 215 F.3d 1005, 1013

(9th Cir. 2000).  Application note 1 states that its definition of "drug trafficking offense" applies to *all* of subsection (b)(1).  U.S.S.G. § 2L1.2, cmt. n.1.  Under that application note, simple possession is not a drug-trafficking offense.  However, application note 2 supplies a special rule that applies *only with respect to subsection (b)(1)(C)*, namely, that the definition of "aggravated felony" is to be determined by reference to 8 U.S.C. § 1101(a)(43).  U.S.S.G. § 2L1.2, cmt. n.2. Under that statute, simple possession can be an aggravated felony. [*United States v. Ibarra-Galindo*, 206 F.3d 1337, 1339 (9th Cir. 2000)].  Because the application note requiring courts to look to 8 U.S.C. § 1101(a)(43) when applying U.S.S.G. § 2L1.2(b)(1)(C) is more specific than the one mandating a general rule for all of subsection (b)(1), the former takes precedence over the latter.

Finally, application note 2 states that "'aggravated felony' has the meaning given that term in 8 U.S.C. § 1101(a)(43)."  That statutory provision defines an "aggravated felony" as a "drug trafficking crime (*as defined in section 924(c) of Title 18*)." (Emphasis added.) Section 1101(a)(43) does *not* state that an aggravated felony is a "drug trafficking offense (as defined in application note 1 of U.S.S.G. § 2L1.2)."  To accept Defendant's interpretation we would have to ignore the text of the statute, which requires us to define "drug trafficking crime" through reference to § 924(c) and the statutes it cites.

*Soberanes*, 318 F.3d at 963-64 (footnotes omitted); *see also United States v. Caicedo-Cuero*, 312 F.3d 697, 706-11 (5th Cir. 2002) (same).

We have nothing to add to the Ninth Circuit's concise analysis and hereby adopt it as our own.  The decision to carry forward the term "aggravated felony," while retaining the provision of the application notes defining that key term by reference to 8 U.S.C. § 1101(a)(43), makes clear the Sentencing Commission intended that state felony convictions for simple possession qualify for the eight-

level enhancement set out in § 2L1.2(b)(1)(C).[2] For that reason, the rule of lenity

has no application in this case. *See Muscarello v. United States*, 524 U.S. 125,

138 (1998) (holding that the rule of lenity "applies only if, after seizing

everything from which aid can be derived, . . . we can make no more than a guess

---

[2]Castro-Rocha filed supplemental authority pursuant to Fed. R. App. P. 28(j), noting the Sentencing Commission has proposed an amendment to § 2L1.2(b)(1)(C) that would remove simple possession offenses from the definition of "aggravated felony." *See* Sentencing Guidelines for United States Courts, 67 Fed. Reg. 77,532-01, 77,539-40 (proposed Dec. 18, 2002). In concluding that the proposed amendment did not alter its view of § 2L1.2(b)(1)(C), the Ninth Circuit concluded as follows:

> Whatever the ultimate fate of the proposed amendment, this argument is unavailing. The Supreme Court has cautioned against the use of later legislative history in understanding an earlier-enacted statute. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117-18 (1980). As the Court explained, "even when it would otherwise be useful, subsequent legislative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment." *Id.* at 118 n.13.
>
> Here, the text of the guideline as it existed when Defendant was sentenced, along with our cases, provide a reasonable and coherent interpretation. This is not the rare case in which later-suggested changes to the text illuminate its pre-existing meaning. Instead, the proposed changes likely reflect the Sentencing Commission's view that the penalties prescribed by the existing guideline may be too harsh. . . .
>
> In other words, the proposed amendments do not necessarily reveal the Sentencing Commission's intent when it drafted the 2001 amendments. Rather, the proposed change is just that—a change.
>
> For now, drug-possession offenses still can be aggravated felonies.

*United States v. Soberanes*, 318 F.3d 959, 964-65 (9th Cir. 2003). Like the Ninth Circuit, we conclude that the proposed amendments to § 2L1.2(b)(1)(C) do not speak at all to the proper interpretation of the current version of the guideline.

as to what Congress intended" (quotations omitted)). Castro-Rocha's prior Texas conviction for possession of cocaine is an "aggravated felony" within the meaning of U.S.S.G. § 2L1.2(b)(1)(C). Accordingly, the judgment of the United States District Court for the District of Colorado is hereby **AFFIRMED**.